E-FILED
Friday, 25 May, 2007 01:19:37 PM
Clerk, U.S. District Court, ILCD

# United States District Court

CENTRAL DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA

v.

**CRIMINAL COMPLAINT**

RICHARD HOFFMAN

CASE NUMBER: 07-6041

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. In or about May, 2007, in McDonough County, in the Central District of Illinois and elsewhere, defendant, (Track Statutory Language of Offense)

RICHARD HOFFMAN, knowingly attempted to obstruct and impede a federal criminal investigation occurring in the Central District of Illinois, by knowingly using intimidation and threats to persuade or attempt to persuade another person to influence delay or prevent the testimony of another person in a criminal investigation in the Central District of Illinois,

in violation of Title **18** United States Code, Section(s) **1512**

I further state that I am a(n) **Special Agent - DEA** and that this Complaint is based on the following facts:

SEE ATTACHMENT

Continued on the attached sheet and made a part hereof:   ☒ Yes   ☐ No

s/Agent
Signature of Complainant
Paul Larsen
Special Agent - DEA

Sworn to before me and subscribed in my presence,

May 25, 2007 at Peoria, IL
Date                              City and State

JOHN A. GORMAN
United States Magistrate Judge

s/John a. Gorman
Signature of Judicial Officer

Name & Title of Judicial Officer

## AFFIDAVIT IN SUPPORT OF ARREST WARRANT

Your affiant, Paul Larsen, is a special agent with the Drug Enforcement Administration, stationed in Springfield, Illinois. Your affiant has been so employed since July 1999. Prior to being employed by the Drug Enforcement Administration, your affiant was employed for five years as a police officer for the Florence, S.C., Police Department. From 1997 to 1999, your affiant was assigned to the Drug Enforcement Administration as a narcotics investigator. During the course of your affiant's law enforcement experience, your affiant has received extensive training for investigations of narcotics violations. In addition, your affiant has also participated in numerous arrests and seizures.

During this investigation, the Springfield, Illinois, Resident Office of the Drug Enforcement Administration identified Larry PUCCI, of Sarasota, Florida, as a methamphetamine distributor. PUCCI directed an associate, hereafter referred to as Confidential Source 2, or CS-2, to deliver methamphetamine to another associate, hereafter referred to as Confidential Source 1, or CS-1.

On May 5, 2007, CS-1 made arrangements to acquire four ounces of methamphetamine from CS-2 in Springfield. After delivering the methamphetamine to CS-1, police arrested CS-2, who was in possession of approximately one and three-quarters pounds of methamphetamine. During a post-arrest interview pursuant to Miranda, CS-2 told your affiant that one pound of the methamphetamine had been indented for a customer named Richard HOFFMAN. According to CS-2, he obtained the methamphetamine in Phoenix, Arizona. CS-2 said he had been distributing methamphetamine for PUCCI for approximately six to eight months before this incident. CS-2 said PUCCI arranged for him to deliver the methamphetamine to several people, including somebody he met near Bordentown, New Jersey. CS-2 said the person's name was Richard HOFFMAN, who was described by CS-2 as a white male with long hair and who looked like "a 1970 hippie." CS-2 said that, on average, he obtained methamphetamine from PUCCI on two occasions per month. CS-2 then met HOFFMAN and other customers. In addition, CS-2 said he distributed from two to six ounces at a time to HOFFMAN, with eight ounces the most during a trip in April 2007. Many of their meetings happened in the parking lot of a Petro truck plaza on the New Jersey Turnpike in Bordentown.

Following CS-2's arrest, he allowed police to examine his cellular telephone. During a review of the numbers programmed into the telephone, police saw the number 609-404-6492 programmed with the "Richard." CS-2 explained that was the number he used to contact HOFFMAN. In addition, during an inspection of an address book in CS-2's possession, SA Larsen saw the name "Richard

1

HOFFMAN," with an address of 10 Winslow Drive, Elm, New Jersey, 08037. SA Larsen learned the town of Elm was near Bordentown.

Using the name and address in CS-2's book, police subsequently acquired a date of birth of birth (06-16-1956) and a New Jersey driver's license number for a Richard HOFFMAN whose driver's license listed that same address. In addition, SA Larsen acquired a New Jersey driver's license picture for HOFFMAN. SA Larsen displayed the picture to CS-2 and asked if he knew the person. CS-2 said that was Richard HOFFMAN.

When HOFFMAN was taken into custody on May 8, 2007, your affiant wrote an affidavit detailing the statements of CS-2. The name of CS-2 wasn't used, but he was referred to as CS-2. The affidavit contained information about CS-2's recorded telephone calls to HOFFMAN at the direction of police. Your affiant learned that during HOFFMAN's post-arrest statement, he confirmed to DEA agents in New Jersey the details CS-2 told your affiant about their methamphetamine distribution activities. HOFFMAN was subsequently released on bond.

On May 13, 2007, CS-2 made telephonic contact with your affiant. According to CS-2, he received a message on his cellular telephone from HOFFMAN. The call had been made about 10 a.m. Central Standard Time on May 13, 2007, according to CS-2's review of his cellular telephone. CS-2 saved the voice message and played it for your affiant, who then recorded the message. The message said, "Dickie, call me ASAP. Jersey, Bye."

On May 14, 2007, CS-2 again made telephonic contact with your affiant. CS-2 said he reviewed his cellular telephone's call log and saw he had another message from HOFFMAN, this time at approximately 11:53 p.m. CST on May 13, 2007. CS-2 saved the voice message and played it for your affiant, who then recorded the message. The message said, "Larry, this is Dickie. You could at least have the decency to call me back, O.K.? You know what I'm what I'm talking about."

On May 18, 2007, CS-2 telephoned your affiant and said HOFFMAN left another message on the voice mail of CS-2's cellular telephone. The CS said the message was left at approximately 3:08 p.m. on May 18, 2007. Once again, CS-2 saved the voice message and played it for your affiant, who then recorded the message. The message said, "You ain't nothin' but a low-life Alabama motherfucking weasel, O.K.? You have a nice day. I wish the best for you, you fuckin' cheese-eatin' motherfucker. Remember, people like you have bad things happen. Can have heart attacks, strokes, shit like that. You fuckin' cheese-eatin' motherfucker. I hope you enjoy what the fuck you did. Hope your fuckin' family suffers for it."

On May 21, 2007, CS-2 telephoned your affiant and said HOFFMAN left a fourth message on the voice mail of CS-2's cellular telephone. The CS said the message was left at approximately 3:14 p.m. on May 20, 2007. CS-2 said he saved the voice message and then played it for your affiant, who then recorded the message. The message said, "Yeah, Larry. Gimme a call, man. Let me know what's fuckin' going on, O.K.? 'Cause you left me out to fuckin' dry, O.K.? I already know what you are, but you could at least have the decency to fuckin' call me, O.K. I know you're a fuckin' informant, and I know you're a fuckin' rat. I know you and your fuckin' wife got busted with two-thousand dollars and methamphetamines in her purse, O.K?, so, at least fuckin' have the decency to call me. I never fucked over on you. I always took care of you, O.K.? I didn't take you as that kind of person. I thought people down South were nice people. But considering what I'm listening to or hearing from the DEA, that you ain't nothing but a fuckin' cheese-eatin' fuckin' little fuckin' weasel. 'Cause if you don't call me back, I'm gonna have someone call you. Bye."

CS-2 told your affiant that he was concerned for his own safety and the safety of his family.

Your affiant knows from prior experience that defendants sometimes figure out the identity of the informant working with police that helped bring charges against defendants. In addition, your affiant knows from prior experience that those defendants sometimes leave messages, like the ones detailed in this affidavit, to scare and intimidate the informants.

Based on the information in this affidavit, your affiant requests the issuance of an arrest warrant charging Richard HOFFMAN with Title 18, United States Code, Section 1512.

s/Agent
Paul Larsen, Special Agent
Drug Enforcement Administration

Sworn to and subscribed to
Before me _____MAY 25_____, 2007.

s/ Judge
John A. Gorman
United States Magistrate Judge
Peoria, Illinois

3