UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 07-10062 |
| | ) | |
| | ) | |
| RICHARD HOFFMAN, | ) | |
| | ) | |
| Defendant. | ) | |

**SENTENCING MEMORANDUM**

Defendant, RICHARD HOFFMAN, (hereinafter "Hoffman"), by and through his attorney, Marc Barnett,, respectfully submits the following sentencing memorandum to the Court, in order to provide information to assist the Court in fashioning a sentence "sufficient but not greater than necessary" to achieve the statutory purposes of punishment as required by 18 U.S.C. § 3553(a) in light of United States v. Booker, 125 S. Ct. 738 (2005), and its progeny.

**INTRODUCTION**

Hoffman is a 52 years old former steel worker. Hoffman is also a long-time alcoholic and a drug addict. After apparently successfully completing a rehab program, Hoffman was severely injured in a work related accident. Several surgeries later, Hoffman found himself unemployed and disabled; in chronic pain and with multitude of painkiller medications. Unable to deal with the pain, Hoffman relapsed and began using methamphetamines and cannabis.

Hoffman was charged in a two-count superseding indictment. Count 1 charged a narcotics conspiracy, beginning in or about 2006, through May of 2007. Count 2 charged witness intimidation in May of 2007.

Hoffman pleaded guilty to Count 1, pursuant to a written plea agreement on February 6, 2008.

## COMMENTS PERTAINING TO THE PRESENTENCE INVESTIGATION REPORT

Federal Rule of Criminal Procedure 32 (d) (1) (B) requires that presentence investigation report (hereinafter "PSR"), contain calculation of defendant's offense level and criminal history. The Probation Officer, in preparing this report, takes a position that defendant is responsible for 8,795.3 kilograms of marijuana equivalent, resulting in a base offense level of 34. The Probation Officer has also found that Hoffman was eligible for obstruction of justice enhancement and not eligible for "safety valve" because of a witness was threatened and/or intimidated.

## DISCUSSION

A.  **Drug Amount Determination:**

   1.  **Legal standards.**

Cases are legion, in holding that government bears the burden of showing by preponderance of evidence amount of drugs involved in an offense. Also, U.S.S.G. Section 2D1.1, Note 12, provides in part that… "where there is no drug seizure… the court shall approximate the quantity of the controlled substance."

As far as the relevant conduct is concerned, U.S.S.G. Section 1B1.3(a)(1)(A), provides that base offense level shall be determined on the basis of the following:

[a]ll acts and omissions committed, aided, abetted,…by the defendant; … that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense;

In <u>United States v. Romero</u>, 469 F.3d 1139 (7th Circuit, 2006), appellate court noted, at p.1147:

"Generally, a court is entitled to rely on the PSR in ruling on factual issues in the sentencing context so long as the PSR is based on sufficiently reliable information"…."When the [district] court relies on such information in sentencing a defendant, the defendant bears a burden of showing that the [PSR] is inaccurate or unreliable."

**2.     Defendant's Position**:

As noted in the letter to the Probation Officer, defendant, while conceding that it might not affect Hoffman's base offense level, questioned the drug amount determination contained in the PSR (PSR p.8, ¶26).

In essence, Hoffman had only $10,000 available for this transaction. According to the discovery materials provided by the government in a recorded conversation on May 6, 2007, between CS and Hoffman—"<u>The CS told HOFFMAN that PUCCI said to give HOFFMAN only the amount for which he could pay.</u>" (emphasis added). Thus, although CS claimed that he intended to deliver 1 pound to Hoffman, he knew how much money Hoffman had and he was specifically instructed not to front any drugs. So, regardless of Hoffman's desires, he would only be able to obtain 5 ounces of methamphetamines—114.4 grams of actual methamphetamine—equivalent to 2, 288 kilograms of marijuana.

Hoffman, at the time of his arrest on May 8, 2007, was in possession of one ounce of methamphetamines. According to the arrest reports, police found inside the vehicle, approximately $10,000 in cash, <u>approximately one ounce of methamphetamine</u> (emphasis added) and a scale… (While the lab report indicates 57.2 grams of methamphetamine mixture, it is possible the items were mislabeled or commingled while being processed and sent to a lab in Illinois). This would be equivalent to 56.7 kilograms of marijuana.

The marijuana equivalent for offense level 34 is between 3,000 kilograms and 10,000 kilograms, it is Hoffman's position that he is accountable for 3,705 kilograms of marijuana equivalent, placing him at the lower limit of the range.

**B.      Adjustment for Obstruction of Justice**:

Pursuant to §3C1.1, if the defendant willfully…attempted to obstruct or impede the administration of justice during the course of the investigation, prosecution,…of the instant offense of conviction… increase the offense level by 2 levels.

The Seventh Circuit in <u>United States v. Irby</u>, 240 F.3d 597, 600 (7th Cir. 2001), upheld a 2-level increase for obstruction of justice because defendant tampered with a witness by asking him not to testify. The witness testified in court that defendant "was not trying to get him not to come to court." However, the district court found that this call constituted an "implied threat", and imposed the enhancement.

Here, Hoffman, made several calls after his arrest asking that "CS", (Mr. Swink) call him back including the call on May 20, 2007:

"Yeah, Larry. Gimme a call, man. Let me know what's fuckin' going on, ok? 'Cause you left me out to fuckin' dry, ok? I already know what you are, but you could at least have the decency to fuckin' call me, ok. I know you're a fuckin' informant, and you're a fuckin' rat. I know you and your fuckin' wife got busted with two thousand dollars and methamphetamines in her purse, ok? So, at least fuckin' have the decency to call me. I never fucked over on you. I always took care of you, ok? I didn't take you as

4

that kind of person. I thought people down south were nice people, that you ain't nothing but a fuckin' cheese-eatin' fuckin' weasel. Cause if you don't call me back, I'm gonna have someone call you. Bye."

Clearly this is an indication that telephone calls were made out of frustration and anger in his inability to talk to Mr. Swink, and not with intent to threaten or intimidate him. This was not a "willful" attempt to obstruct administration of justice. In fact, although the authorities were advised of these calls as they occurred, Hoffman was not arrested for these calls until his arraignment, some time later—indicating that these calls were not sufficiently serious to cause his immediate arrest. Hoffman reiterated this at the time of his arraignment, on May 25, 2007, at which time he advised the Court "[t]hat was just a lot of anger, your Honor."

At the time of his arrest and for some time after, was still under the influence of drugs, which remained in his system leaving him in a fearful and agitated condition.

C.     **Specific Offense Characteristic—Safety Valve**

The Probation Officer, in preparing this report, noted that [T]he defendant has met three of the five criteria set out in U.S.S.G. §5CI.2. (PSR p.8,¶27).

"[P]ursuant to §2Dl.l(b)(7), a two-level reduction is warranted if the defendant meets the criteria of §5CI.2 (1-5) and has a base offense level of 26 or higher. The criteria include 1) having no more than one criminal history point; 2) absence of threats of violence or possession of a firearm or dangerous weapon on the part of the defendant in connection with the instant offense; 3) the instant offense did not result in death or serious bodily injury to any person; 4) the defendant was not an organizer, leader, or manager, or supervisor of others in connection with the instant offense within the meaning of § 3B1.1 or involved in a continuing criminal enterprise; and 5) the defendant

5

has truthfully provided to the government all information and evidence concerning the instant offense.

As soon as Hoffman was arrested he admitted his participation in this offense. He fully cooperated with the government by providing information about his role in this offense, as well as that of Larry Swink and others, during a proffer meeting on May 30, 2007, shortly after his arraignment.

It appears that in fact Probation Officer relied on factor #2—threats on part of the defendant in connection with the instant offense, in finding him not eligible for the "safety valve" adjustment.

Again, Hoffman respectfully requests that the Court find that his calls did not amount to credible threats of violence in connection with the instant offense.

## POST-BOOKER SENTENCING CONSIDERATIONS

When sentencing an individual, a court is required to determine how best to comply with 18 U.S.C. §3553(a)'s primary directive: to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, to achieve the statutory purposes of punishment—justice, deterrence, incapacitation, and rehabilitation. In making this determination, courts should consider the advisory sentencing guidelines, but must weigh all of the § 3553(a) factors. Kimbrough v. United States, 128 S. Ct. 558, 564-565 (2007); United States v. Booker, 543 U. S. 220, 245 (2005). This statute requires district courts to give "respectful consideration" to the guidelines, but "permits the court to tailor the sentence in light of other statutory concerns as well." Kimbrough, 128 S. Ct. at 570 (citing Booker, 543 U.S. at 245-246); see also Gall v. United States, 128 S. Ct. 586,594-596 (2007). A district court is free to impose a non-guideline sentence when the case falls outside the "heartland," when the guideline range fails to reflect the §3553(a) considerations, or when a case "warrants a different sentence regardless." Rita v.

6

United States, 127 S. Ct. 2456, 2465 (2007).

The sufficient-but-not-greater-than-necessary directive is not a "factor" to be considered. Rather, it sets an independent upper limit on the sentence a court may impose. In determining what sentence is sufficient but not greater than necessary, the court should consider several factors including (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) the guidelines and policy statements issued by the Sentencing Commission, including the (now advisory) guideline range; and (3) the need to provide the defendant correctional treatment "in the most effective manner." 18 U.S.C. § 3553(a)(1), (a)(2)-(6).

Hoffman is almost 52 years old. After graduating high school he became a union steel worker. Hoffman is also an alcoholic and a drug addict. He began to make a break from the vicious cycle of drug and alcohol addiction by entering a lengthy inpatient drug treatment program in 1989. He experienced a period of sobriety following the completion of this program. In 2003, however, Hoffman was involved in an industrial accident at work—a load of steel beams fell on him—resulting in severe injuries to his back and spine. As a result of the accident Hoffman became disabled and unemployed. He had several surgeries but still is impaired in his mobility. He suffers from chronic pain and had an electrostimulation pack implanted in his back—which he has been unable to use since being taken into custody. He has been prescribed multiple painkillers following the accident and as a result of this chronic severe pain he began using methamphetamines. He has been diagnosed with depressive disorder. The drugs deepened the depression, leading to further self-medication.

He also relapsed and began using drugs. During a proffer meeting on May 30, 2007, Hoffman acknowledged that he was buying amphetamines for his own use. To accomplish this he and "approximately seven of his friends pooled their money to

purchase methamphetamine. Each person would then get a small portion of the amount Hoffman acquired." In essence Hoffman got his drugs for little or no money.

There is no dispute that this is a very serious offense. Hoffman's conduct in the instant case can best be understood in the context of his psychological and medical background. His drug dealing was driven by his personal needs and not as a source of income. What is clear is that deterrence and protection of public are not major issues—it is highly unlikely that Hoffman will ever engage in criminal activity again. As noted in the PSR, he does have a loving and supportive family.

What Hoffman needs is treatment. Section 3553(a)(2)(D) directs the Court to fashion a sentence that provides the defendant with necessary "medical care" or other "treatment in the most effective manner." Accordingly, a sentence which includes intensive in-patient drug and mental health treatment is the most effective way to enable Hoffman to continue dealing with his drug and medical problems, necessary to his continued rehabilitation, in order to allow him to return to his family and become a productive member of society.

## **CONCLUSION**

WHEREFORE, RICHARD HOFFMAN, respectfully requests this Court to consider his arguments with respect to obstruction and safety valve in imposing a sentence that is sufficient but not greater than necessary, and that this Court impose a sentence, which would also allow part of the incarceration component to be served in an in-patient facility that would address his medical needs.

Respectfully submitted,
RICHARD HOFFMAN,

By: /s/ Marc Barnett
_____
Marc Barnett.

CERTIFICATE OF SERVICE

The undersigned Attorney hereby certifies that in accordance with Fed. R. Grim. P. 49, Fed. R. Civ. P. 5, L.R5.5, and the General Order on Electronic Case Filing (ECF), the following documents:

DEFENDANT'S SENTENCING MEMORANDUM

were served pursuant to the District Court's ECF system as to ECF filers, if any, and were sent by first-class -mail on May 5, 2008, to the following non ECF filers:
none

Marc Barnett
Attorney for Defendant
53 West Jackson Street
Chicago, Illinois 60604
(312) 719 0376